

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Hon. V. C. Marshall, Chairman
State Soil Conservation Board
Temple, Texas

Dear Sir:

Opinion No. O-1495
Re: Construction of Paragraphs
(b) and (c) of Section 5
and Section 13 of the State
Soil Conservation Act.

Your request for our opinion on the questions as
are herein stated has been received by this Department.

Your letter reads in part as follows:

"Section 5 (c) of the Texas State Soil Conser-
vation Act provides: 'When an election is ordered
for the creation of a district will the State Soil
Conservation Board be required to hold an election
at each voting box within the proposed district
which has been designated by the Commissioners'
Courts as regular voting boxes within the counties
affected?'

"Section 13. 'Discontinuance of Districts,'
second paragraph, provides: That the Board shall
determine the number of persons necessary to hold
an election, in no event to be less than three.'
This provision does not appear elsewhere in the
law. Will this same provision apply in elections
for districts, district supervisors, land use re-
gulations, and other elections as are provided for
in the law?

"In Section 5 (b) of the State Soil Conserva-
tion Law the State Board is directed to define by
metes and bounds, or by legal subdivisions, the
boundaries of soil conservation districts before
approval. We would be pleased to have your opin-
ion as to what constitutes a legal subdivision as

referred to in describing the boundaries of a district.

"Would the following list of political subdivisions or boundaries and physical features of the topography furnish legal description within the intent of the State Soil Conservation Law in a manner satisfactory for describing the metes and bounds of Soil Conservation Districts?: Political boundaries, counties, school districts, city limits, precinct boundaries, township and section lines; physical and topographical: railroads, highways, county roads, rivers, and creeks.

"Presuming that it is legal to use some of the foregoing political boundaries and physical features in defining the limits of the districts, would the following hypothetical description be satisfactory?:

"'Beginning at the confluence of the San Gabriel and Little Rivers, thence up the San Gabriel twenty miles in a northwesterly direction to the crossing of State Highway Number 95 over the San Gabriel; thence fifteen miles north contiguous to the easterly side of said highway to the point of intersection of the said highway and the Bell County line; thence fifteen miles in an easterly direction along the Bell County line to the intersection of the said county line and the main line of the M. K. & T. Railway Company, which runs between Temple and Granger, Texas; thence in a northerly direction fourteen miles along the center line of the M. K. & T. Railway Company to the intersection of the said railway center line with the center line of the county road that runs from Little River, Texas, to Rogers, Texas; thence in an easterly direction ten miles along said county road to the intersection of said county road with the west boundary of Precinct No. 4 of Bell County, Texas; thence south seven miles along said precinct line to the intersection of the said precinct line with the mid-stream of the Little River; thence thirty miles down the Little River following its devious meanderings to the confluence of the Little River and the San Gabriel River, the point of beginning; and containing 250,000 acres, more or less, and consisting of portions of Bell, Williamson, and Milam Counties.'"

Paragraphs B and C of Section 5 of the State Soil Conservation Law reads as follows:

"B. Within thirty (30) days after such a petition has been filed with the State Soil Conservation Board, it shall cause due notice to be given of a proposed hearing upon the question of the desirability and necessity, in the interest of the public health, safety, and welfare, of the creation of such district, upon the question of the appropriate boundaries to be assigned to such district, upon the propriety of the petition and other proceedings taken under this Act, and upon all questions relevant to such inquiries. All owners of land within the limits of the territory described in the petition, and of lands within any territory considered for addition to such described territory, and all other interested parties, shall have the right to attend such hearings and to be heard. If it shall appear upon the hearing that it may be desirable to include within the proposed district territory outside of the area within which due notice of the hearing has been given, the hearing shall be adjourned and due notice of further hearing shall be given throughout the entire area considered for inclusion in the district, and such further hearing held. After such hearing, if the Board shall determine, upon the facts presented at such hearing and upon such other relevant facts and information as may be available, that there is need, in the interest of the public health, safety, and welfare, for a Soil Conservation District to function in the territory considered at the hearing, it shall make and record such determination, and shall define, by metes and bounds or by legal subdivisions, the boundaries of such district. In making such determination and in defining such boundaries, the Board shall give due weight and consideration to the topography of the area considered and of the state, the composition of the soils therein, the distribution of erosion, the prevailing land-use practices, the desirability and necessity of including within the boundaries the particular lands under consideration and the benefits such lands may receive from being included within such boundaries, the relation of the proposed area to existing watersheds and agricultural regions, and to other Soil Conservation Districts already organized or proposed for organization under the provisions of this Act, and such

other physical, geographical, and economic factors as are relevant, having due regard to the legislative determinations set forth in Section 2 of this Act. If the Board shall determine after such hearing, after due consideration of the said relevant facts, that there is no need for a Soil Conservation District to function in the territory considered at the hearing, it shall make and record such determination and shall deny the petition. After six (6) months shall have expired from the date of the denial of any such petition, subsequent petitions covering the same or substantially the same territory may be filed as aforesaid and new hearings held and determinations made thereon.

"C. After the Board has made and recorded a determination that there is need, in the interest of the public health, safety and welfare, for the organization of a district in a particular territory and has defined the boundaries thereof, it shall consider the question whether the operation of a district within such boundaries with the powers conferred upon Soil Conservation District in this Act is administratively practicable and feasible. To assist the Board in the determination of such administrative practicability and feasibility, it shall be the duty of the Board, within a reasonable time after entry of the finding that there is need for the organization of the proposed district and the determination of the boundaries thereof, to hold an election within the proposed district upon the proposition of the creation of the district, and to cause due notice of such election to be given, which notice shall set forth the boundaries of the proposed district. The question shall be submitted by ballots upon which the words, 'For creation of a Soil Conservation District of the lands below described and lying in the county (ies) of ————— and ———————————————,' and, 'Against creation of a Soil Conservation District of the lands below described and lying the county (ies) of ————— and ———————————————,' shall appear. All landowners within the boundaries of the territory as determined by the State Soil Conservation Board, shall be eligible to vote in such election. Only such landowners shall be eligible to vote."

Section 13 of the State Soil Conservation Law reads, in part, as follows:

"At any time after five (5) years after the organization of a district under the provisions of this Act, and fifty (50) landowners within the boundaries of such district may file a petition with the State Soil Conservation Board praying that the operations of the district be terminated and the existence of the district discontinued. The Board may conduct such public meetings and public hearings upon such petition as may be necessary to assist it in the consideration thereof. Within sixty (60) days after such a petition has been received by the Board it shall give due notice of the holding of an election, and shall supervise such election, and issue appropriate regulations governing the conduct thereof, the question to be submitted by ballots upon which the words, 'For terminating the existence of the ———————————— (name of the soil conservation district to be here inserted),' and 'Against terminating the existence of the ———————————————— (name of the soil conservation district to be here inserted)' shall appear.

"All landowners within the boundaries of the district shall be eligible to vote in such election. Only such landowners shall be eligible to vote. Such elections shall be conducted in conformity with the General Election Laws of this State, except as herein otherwise provided, and except that the ballots shall not be numbered or marked for identification purposes, and provided further that the Board determine the number of persons necessary to hold such election, but in no event to be less than three (3).

"Providing that the compensation of all election judges and clerks in elections provided for hereunder shall not exceed the sum of Two Dollars ($2) a day each."

Regarding elections creating districts, the district supervisors, land-use regulations, and other elections as are provided for in the State Soil Conservation Law, the Act provides that such elections shall be conducted in conformity with the General Election Law of this State, except as otherwise provided, and except that the ballots shall not be numbered or marked for identification purposes. The Act does not authorize the State Soil Conservation Board to divide the respective districts into convenient election precincts and by virtue of au-

thority granted by the statutes, Commissioners' Courts may divide their respective counties, and counties attached thereto for judicial purposes into convenient election precincts. And, as above stated, the elections mentioned herein shall be conducted in conformity with the General Election Laws of this State. Therefore, you are respectfully advised that it is our opinion that the State Soil Conservation Board is required to hold an election at each voting box within the proposed district which has been designated by the Commissioners' Court as regular voting boxes within the counties affected.

In answer to your second question regarding the number of persons necessary to hold any election mentioned in the State Soil Conservation Act, you are respectfully advised that the General Election Laws of this State shall govern in each instance unless otherwise spefirically provided by the Act, and in elections for the discontinuance of districts the Act provides that the Board shall determine the number of persons necessary to hold such election, but in no event to be less than three. This provision applies to no other elections mentioned in the Act and applies only in elections for discontinuance of districts.

We now consider your third question regarding the defining or designation by metes and bounds or by legal subdivisions, the boundaries of soil conservation districts.

Under Paragraph B, Section 5, the State Soil Conservation Law, the State Board is directed to define by metes and bounds, or by legal subdivisions the boundaries of all soil conservation districts before approval. We quote from Words and Phrases as follows:

"Metes and bounds means the boundary line or limit of a tract, which boundary may be pointed out and ascertained by rivers and objects, either natural or artificial which are permanent in character and erection, and so situated with reference to the tract to be described that they may be conveniently used for the purpose indicating its extent. The metes and bounds of a tract are so definitely fixed by locating its center line and naming the width of the tract as if the lines of its true boundary had been given by acres and distances, and the description thus given would in such case prevail over a description given by acres and distances."

Bouvier's Law Dictionary defines metes and bounds as boundary lines of land, with their terminal points and

angles, and further defined the word "Boundary" as any separation, natural or artificial, which marks the confines or line of two contiguous estates.

We are unable to find any statutory definition of the term "legal subdivisions". However, Words and Phrases defines the term "legal subdivisions" as follows:

"Legal subdivisions refer to the smallest subdivision under the congressional system of surveying."

We are of the opinion that the Legislature intended the term "legal subdivisions" to mean political or governmental subdivision of the State or other legal subdivisions thereof such as counties, school districts, precinct boundaries, city limits, township and section lines, physical topographical, railroads, highways, county roads, rivers, etc.

When a Soil Conservation District is defined by metes and bounds or by legal subdivisions such as political or governmental subdivisions of the State, such description would be within the meaning and intent of the State Soil Conservation Law. Therefore, you are respectfully advised that the above mentioned hypothetical description would be satisfactory.

Trusting that the foregoing fully answers your inquiry, we remain

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *Ardell William*

Ardell Williams
Assistant

AW:jm

APPROVED OCT 10, 1939

*Robert E. Kepple*

Acting ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
BY *BWB*
CHAIRMAN